# United States District Court

**FILED**
AUG 2 4 2017
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY CLERK

__**EASTERN**__ District of __**CALIFORNIA**__

In the Matter of the Seizure of

(Address or brief description of property or premises to be seized)

**APPLICATION AND AFFIDAVIT
FOR SEIZURE WARRANT**

Approximatley $120,730.00 in U.S. Currency,

CASE NUMBER: 2:17-SW-752 DB

I, <u>Karl A. Schmid, Special Agent, DEA</u>, being duly sworn depose and say:

I am a(n) <u>Special Agent, DEA</u> and have reason to believe that

in the __**EASTERN**__ District of __**CALIFORNIA**__
there is now certain property which is subject to forfeiture to the United States, namely (describe the property to be seized)

Approximatley $120,730.00 in U.S. Currency,

which is (state one or more bases for seizure under the United States Code)

subject to seizure pursuant to 21 U.S.C. § 881(b) incorporating 18 U.S.C. § 981(b), and subject to forfeiture pursuant to 21 U.S.C § 881(a)(6),

concerning violations of Title <u>21</u> United States Code, Section(s) <u>841(a)(1)</u>.

The facts to support a finding of probable cause for issuance of a seizure warrant are as follows:

**See attached affidavit.**

Continued on the attached sheet and made a part hereof.  ☒ Yes  ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

Aug 24, 2017         at  Sacramento, California
Date                       City     State

Deborah Barnes, U.S. Magistrate Judge         _____
Name of Judicial Officer    Title of Judicial Officer        Signature of Judicial Officer

# AFFIDAVIT OF KARL A. SCHMID
# IN SUPPORT OF SEIZURE WARRANT

## I. INTRODUCTION

I, Karl A. Schmid, a Special Agent with the Drug Enforcement Administration (DEA), presently assigned to the Sacramento District Office, being first duly sworn, and state:

1. This affidavit is submitted in support of the Government's application for the issuance of warrant to seize for civil forfeiture the following:

    a. Approximately $120,730.00 in U.S Currency

2. This Affidavit is made in support of a warrant to seize the above-defined funds and/or assets pursuant to 21 U.S.C. § 881(b) incorporating 18 U.S.C. § 981(b). The items identified above are subject to civil forfeiture pursuant to 21 U.S.C. § 881(a)(6) as they represent proceeds traceable to the sale of controlled substances or funds used or intended to be used to facilitate a federal drug crime in violation of 21 U.S.C. §§ 841(a)(1) and 21 U.S.C. §§ 846.

3. Specifically, the facts set forth below establish probable cause to believe that Jesus BERNAL Urena, Daniel BARRAZA-Bazua were involved in the distribution of large quantities of methamphetamine in the United States and in the Eastern District of California. The facts further establish that large amounts of cash gained from illicit drug transactions were kept at 703 North F Street, Stockton, California, a home where Ramon CISNEROS resides. CISNEROS is believed to be an associate of BERNAL.

1

## II. BACKGROUND, TRAINING AND EXPERIENCE OF AFFIANT

4. I am a Special Agent of the United States Department of Justice, Drug Enforcement Administration ("DEA"). I have been a DEA Special Agent since July 2012. Prior to working for DEA, I was employed as a police officer for the City of Virginia Beach Police Department from 2005 to 2012. I am currently assigned to the DEA Sacramento District Office charged with investigating major drug trafficking organizations operating in the Eastern District of California, and elsewhere.

5. As a DEA agent, I have assisted in the execution of search warrants on many occasions for controlled substances and/or related paraphernalia, indicia, and other evidence of violations of federal drug statutes. I have participated in investigations targeting individuals and organizations trafficking cocaine, heroin, marijuana, and methamphetamine.

6. During the course of my career as a police officer and DEA Special Agent, I have participated in at least one hundred drug investigations. Through my training, experience, and interaction with other experienced special agents, task force agents, and other drug investigators, I have become familiar with the methods employed by drug traffickers to smuggle, safeguard, store, transport, and distribute drugs; to collect and conceal drug related proceeds; and to communicate with other participants to accomplish such objectives. These communication methods include the use of telephones, pre-paid or debit calling cards, public telephones, wireless communications technology such as paging devices and cellular telephones, counter-surveillance, and use of codes in communications in an attempt to avoid detection by law enforcement. Based on my training and experience, I also know that violators of the controlled substances laws often purchase

telephones or subscribe to telephone service using false names and/or other individuals' names to avoid detection by law enforcement.

7. I have received specialized training in drug investigation matters including, but not limited to, drug interdiction, drug detection, money laundering techniques and schemes, drug identification, and asset identification and removal, from the DEA. In total, I have received over 500 hours of comprehensive formalized classroom instruction in those areas outlined above.

8. In addition to my personal knowledge, this affidavit is based on (1) information I obtained from related investigations; conversations with other law enforcement officers including oral and written investigative and laboratory reports that I received directly or indirectly from other law enforcement officials; (2) physical surveillance conducted by law enforcement officials reported to me either directly or indirectly; (3) a review of public records, telephone toll records, and subscriber information; (4) information provided from confidential sources of information, cooperating defendants, and other sources of information working with law enforcement agencies; (5) a review of driver's license and automobile registration records; (6) records from various law enforcement databases, including but not limited to the National Law Enforcement Telecommunications System ("NLETS") and the National Crime Information Center ("NCIC"); (7) my training and experience as a DEA agent and; (8) the training and experience of other law enforcement officials with whom I consulted during this investigation and the preparation of this Affidavit.

9. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am an officer of the United States empowered

by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516

10. The facts and information set forth herein are true based upon my personal knowledge and observations, observations of other law enforcement personnel, observations of cooperating individuals as related to me, my review of investigative reports, notes, transcripts, review of recorded telephone calls, and discussions with other federal, state and local law enforcement officials. I have not included the details of every aspect of the investigation. I have set forth only the facts that I believe are necessary to establish a foundation for an order authorizing agents to seize Approximately $120,730.00 in U.S Currency.

## II.     THE INVESTIGATION

11. Since October 2016, the DEA Sacramento District Office ("SDO"), the San Joaquin Metropolitan Narcotics Task Force ("METRO"), and the Tri-County Drug Enforcement Team ("TRIDENT") - collectively referred to as the "Investigating Agencies" - have been conducting a criminal investigation of Daniel BARRAZA-BAZUA, hereinafter referred to as BARRAZA. The investigation has also focused on BARRAZA's associates operating in Stockton, California. One of BARRAZA's associates was identified as Jesus Romualdo BERNAL URENA.

12. During this investigation, a DEA Confidential Source ("CS") has conducted several controlled purchases of methamphetamine from BARRAZA. During these controlled purchases, agents have used several investigative techniques - including surveillance, toll analysis, wire intercepts, and GPS location information - in their attempt to identify BARRAZA's and BERNAL's associates, drug stash locations, and the destination of drug-related payments.

4

<u>August 1, 2017</u>

13. On August 1, 2017, the Investigating Agencies conducted a controlled purchase of approximately two pounds of methamphetamine from BARRAZA using the CS. During this controlled purchase, the Investigating Agencies conducted surveillance related to BARRAZA and BERNAL. During the surveillance, agents observed BERNAL, driving a white Dodge Dakota bearing California License Plate 76310R1, meet with BARRAZA just prior to the CS purchasing the two pounds of methamphetamine from BARRAZA. Agents believe BERNAL delivered the methamphetamine to BARRAZA that was ultimately purchased by the CS.

14. Agents continued surveillance of the white Dakota driven by BERNAL. Agents observed BERNAL drive and park next to a trailer located on a property parcel # 14340030. Property parcel# 14340030 is located in Stockton, California and is accessed by a driveway located in the 500 Block of N. Windsor Avenue, which contains several small residential structures and several trailers. The trailer that BERNAL parked the white Dakota next to did not have any visible identifying numbers, but is distinct because the roof is covered with a blue tarp, and is referred to as "Trailer# 1" in this Affidavit. Agents kept BERNAL under observation as he went in and out of Trailer# 1. After approximately one hour, agents observed BERNAL drive the white Dakota from Trailer# 1. Agents kept the white Dakota under observation until it arrived in the neighborhood near 703 North F Street, Stockton, California. As the white Dakota drove through the neighborhood close to 703 North F Street, an agent observed the white Dakota driving very slowly and noted that the white Dakota squared the entire city block driving by 703 North F Street twice before making a U-turn in front of the residence and parking. Through my training and experience, I know that driving slowly, circling the block, and conducting U-turns are techniques

commonly referred to as "counter surveillance" used by drug traffickers in an effort to identify if they are being followed.

15. After parking in front of 703 North F Street, an agent observed BERNAL exit the white Dakota and meet with an unknown individual ("UI#1") in front of 703 North F Street. After a brief interaction, BERNAL retrieved a large object from the rear of the white Dakota and carried it inside 703 North F Street followed by the UI#1. After about seven minutes, BERNAL exited 703 North F Street followed by UI#1. BERNAL returned to the white Dakota and UI#1 watched as BERNAL drove from the area before UI#1 returned inside 703 North F Street. Agent's kept the white Dakota under observation and a short time later a Sheriff's Deputy conducted a traffic stop of the white Dakota for a stop sign violation. During this traffic stop it was confirmed that BERNAL was the driver of the white Dakota.

## August 8, 2017

16. On August 8, 2017, agents from the Investigating Agencies conducted several federal search warrants related to the drug trafficking activities of BARRAZA and BERNAL. The white Dakota was stopped on August 8, 2017, shortly after it left from Trailer#1 and the white Dakota was searched as authorized by a federal search warrant. During the search, agents identified that BERNAL was the sole occupant and driver of the white Dakota. Agents also located two concealed aftermarket compartments within the passenger area of the white Dakota. These compartments were locked and had to be pried open by agents to gain access. One of the concealed compartments contained approximately three pounds of methamphetamine separated into three plastic containers. Also, found hidden in this compartment was $10,000.00 in U.S. Currency.

17. Also on August 8, 2017, agents from the Investigating Agencies executed a search warrant at Trailer# 1. Inside Trailer # 1, agents located what is believed to be a methamphetamine conversion lab. Inside Trailer# 1 agents found several plastic containers, containing methamphetamine, several five gallon buckets containing a liquid solution believed to contain methamphetamine. The liquid solution was field tested and showed a presumptive positive result for the presence of methamphetamine. Also found in Trailer# 1 were items indicative of drug distribution, such as scales, packaging materials, ledgers, and chemicals. BERNAL and BARRAZA were subsequently arrested on this date for federal violations of 21 USC § 841(a)(1) and 21 USC § 846.

### Information Related to 703 North F Street, Stockton, California

18. A search of California Department of Motor Vehicle records shows that Ramon Cisneros lists 703 North F Street as his mailing address. 703 North F Street is believed to be Ramon Cisneros residence.

19. A review of Ramon Cisneros' criminal history shows three convictions for felonies related to the distribution of drugs.

20. Agents from METRO have identified Ramon Cisneros as the target of prior drug investigations.

### August 9, 2017

21. On August 9, 2017, agents from METRO executed a state search warrant at 703 North F Street. During the execution of this search warrant, in a hallway closet, agents located an access panel to a crawl space under the residence. Directly beneath the panel agents located an approximately 5 gallon ice chest. A Stockton Police Department Canine, whom is trained in drug detection, showed a positive

alert to the odor of drugs on the ice chest. Inside the ice chest agents located Approximately $120,730.00 in U.S Currency, along with paperwork in the name of Ramon Cisneros and also some jewelry. Approximately $120,730.00 in U.S Currency was found to be separated in several bundles which were secured with rubber bands. Some of Approximately $120,730.00 in U.S Currency was also separated inside a plastic bag. Several of the bundles were labeled "5000" and most of the bundles were divided into increments of $5,000.00. These bundles consisted of bills in denominations of $100, $50, $20, $10, and $1 dollar bills. Agents from METRO conducted a count of Approximately $120,730.00 in U.S Currency and determined it to total $120,730.00 in US Currency. Below are two photos of Approximately $120,730.00 in U.S Currency at the time of seizure.



22. Also located by agents during the search of 703 North F Street, was approximately fourteen grams of powder cocaine, a digital scale, pay and owe ledgers, and packaging material. None of the residents were home during the execution of the search warrant at 703 North F Street. Agents from METRO report that Ramon Cisneros is currently arrestable for violations of California Health and Safety Code 11351, possession of cocaine for sale, which is a felony. Based on my training and experience and the experience of other law enforcement officers, coupled with the evidence items located on the scenes of the search warrants, I believe that the funds located hidden under the floor of Cisneros' residence were drug proceeds from the sale of drugs:

   a. I believe the amount of methamphetamine located at Trailer #1 was indicative that BERNAL was involved in supplying and converting methamphetamine not only to BARRAZA, but also others, in quantities well over the amount of a typical methamphetamine user.

   b. Based on surveillance, agents believe BERNAL is associated with 703 North F Street. Based on my training and experience and the facts that BERNAL went to 703 North F Street shortly after leaving a methamphetamine conversion lab, the counter surveillance techniques observed, and the short duration of BERNAL's stay I believe BERNAL's meeting with UI#1 was criminal in nature.

   c. Items such as pay and owe ledgers, packaging material, cocaine, and a scale, located at 703 North F Street are indicative of drug sales. I believe that the drug detection canine alert on the ice chest containing Approximately $120,730.00 in U.S Currency is an indication the contents have been in close proximity to drugs.

9

d. I believe the amount of U.S currency located in 703 North F Street residence (Approximately $120,730.00 in U.S Currency), the breakdown of denominations, the method the U.S. currency was stored, and having that much money on hand, is consistent with the way drug dealers keep and store money. I know through my training and experience that people who buy drugs for personal use often pay with smaller denominations of U.S. currency (from one dollar bills to one hundred dollar bills). Drug dealers will often keep larger amounts of cash on hand in a convenient manor to purchase more illicit drugs when needed without creating a "paper trail" of evidence, which is likely to be created when withdrawing money from a bank.

## IV. CONCLUSION

23. Based upon the events and evidence outlined in this Affidavit, my training and experience, and the training and experience of the agents that I have consulted with in preparing this Affidavit, there is probable cause to believe that BARRAZA and BERNAL are involved in selling and transporting large amounts of methamphetamine in exchange for U.S currency and BERNAL has been associated with 703 North F Street. I believe the U.S. currency identified below found inside 703 North F Street represents proceeds of the sale of drugs.

///

///

///

///

///

10

25. I request the issuance of a seizure warrant against the following property as proceeds from the distribution and sale of methamphetamine:

    a. Approximately $120,730.00 in U.S. Currency.

Karl A. Schmid
Special Agent
Drug Enforcement Administration

Reviewed and approved as to form:

Kevin C. Khasigian
Assistant United States Attorney

Subscribed and sworn to before me this _24_ day of August 2017.

Hon. Deborah Barnes
United States Magistrate Judge

# United States District Court

__EASTERN__ District of __CALIFORNIA__

In the Matter of the Seizure of

(Name, address or brief description of person, property or premises to be seized)

Approximatley $120,730.00 in U.S. Currency,

**SEIZURE WARRANT**

CASE NUMBER:

2:17 - SW - 7 5 2 DB

TO, <u>Karl A. Schmid, Special Agent, DEA</u> and any Authorized Officer of the United States

Affidavit(s) having been made before me by <u>Karl A. Schmid, Special Agent, DEA</u> who has reason to believe
Affiant

in the __EASTERN__ District of __CALIFORNIA__ there
is now  certain property which is subject to forfeiture to the United States, namely (describe the property to be seized)

**Approximatley $120,730.00 in U.S. Currency,**

**Which is subject to seizure pursuant to 21 U.S.C. § 881(b) incorporating 18 U.S.C. § 981(b), and subject to forfeiture pursuant to 21 U.S.C § 881(a)(6).**

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the property so described is subject to seizure and that grounds exist for the issuance of this seizure warrant.

YOU ARE HEREBY COMMANDED to seize within 14 days the property specified, serving this warrant and making the seizure in the daytime — 6:00 AM to 10:00 P.M., leaving a copy of this warrant and receipt for the property seized, and prepare a written inventory of the property seized and promptly return this warrant to <u>DEBORAH BARNES</u> or <u>Any U.S. Magistrate in the Eastern District of California</u> as required by law.
U.S. Judge or Magistrate

Aug 24, 2017 @ 10:00 am  at  Sacramento, California
Date and Time Issued          City and State

Deborah Barnes, U.S. Magistrate Judge
Name and Title of Judicial Officer          Signature of Judicial Officer

| RETURN | | |
|---|---|---|
| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
| INVENTORY MADE IN THE PRESENCE OF | | |
| INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT | | |

**CERTIFICATION**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

_____        _____
U.S. Judge or Magistrate                                              Date